UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHARMAINE DIXON,

<div style="text-align:center">Plaintiff,</div>

-against-

CITY OF NEW YORK, POLICE OFFICER GALVIN
FERGUSON, Shield No. 2902, individually and in his
official capacity, POLICE OFFICER DAVID TERRELL,
Shield No. 16032, individually and in his official capacity,
POLICE OFFICER "JANE" VAZQUEZ, individually and
in her official capacity, and POLICE OFFICERS "JOHN
DOES 1-5" OF THE 42ND PRECINCT ON MARCH 15,
2011, individually and in their official capacities, fictitious
names used to identify presently unknown police officers,

<div style="text-align:center">Defendants.</div>
-------------------------------------------------------------------X

Docket No. 14 CV 4930 (LAP)

**VERIFIED AMENDED
COMPLAINT**

Jury Trial Demanded

Plaintiff, CHARMAINE DIXON, by her attorneys, HELD & HINES, LLP, as and for her

Verified Amended Complaint, hereinafter states and alleges as follows upon information and

belief:

<div style="text-align:center"><u>**PRELIMINARY STATEMENT**</u></div>

1.     Plaintiff commences this action seeking compensatory damages, punitive

damages, and attorney's fees for violations of her civil, statutory and common law rights by the

defendants, while acting under color of law, as said rights are secured by the Constitution of the

United States of America, 42 U.S.C. §1983 *et seq*.

2.     On or about March 15, 2011, Plaintiff was the victim of an excessive use of force

by the defendant police officers, acting under color of law, in front of her infant daughter.

Plaintiff was then falsely arrested, imprisoned and maliciously prosecuted by the defendants.

Following arraignment on March 17, 2011, Plaintiff was released on her own recognizance. All charges against Plaintiff were dismissed on October 24, 2012 and her record sealed.

3.      Defendants unlawfully refused Plaintiff's request for medical attention for physical injuries she suffered as a result of the defendants' excessive use of force.

4.      Defendants unlawfully strip searched Plaintiff while in custody.

5.      As a result of the aforesaid incident, Plaintiff was caused to suffer bodily injuries, deprivation and loss of liberty, pecuniary loss, psychological and emotional injuries, humiliation, shame, and became the object of jeer and derision.

## JURISDICTION AND VENUE

6.      This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988 and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America.

7.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

8.      Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within Bronx County, New York, which is within this judicial district.

10.      Plaintiff timely commenced this action *pro se* by filing her Complaint with this Court's Pro Se Intake Unit on March 6, 2014. Plaintiff received an acknowledgement of receipt of same on that date. See, Ex. A.

11.     In response to Plaintiff's letter received by the Court on April 28, 2014, informing that she had "submitted a claim on March 6, 2014 and came back nine business days to receive case number and was told that claim was lost", by letter dated May 1, 2014, Richard Wilson, Chief Deputy Clerk, Administration, advised Plaintiff that a search was conducted to locate her claim but it had not, as of that date, been located. Mr. Wilson instructed Plaintiff to resubmit her claim and an *in forma pauperis* application. See, Ex. B.

12.     On July 1, 2014, Plaintiff resubmitted her Complaint *pro se* and modified the caption to reflect the City of New York as a party.

13.     By Order of the Hon. Loretta A. Preska, Chief United States District Judge, dated August 8, 2014, Plaintiff was directed to file an amended complaint within sixty (60) days of said order.

14.     Plaintiff's Amended Complaint is timely.

**PARTIES**

15.     At all times mentioned herein, the plaintiff was and remains a resident of the State of New York.

16.     Upon information and belief, and at all times mentioned herein, the defendant, City of New York (hereinafter referred to as the "City"), was and remains a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

17.     Upon information and belief, and at all times mentioned herein, the City maintains the New York City Police Department (hereinafter referred to as the "NYPD"), pursuant to law.

18.     Pursuant to Section 434 of the New York City Charter ("Charter"), the NYPD

Commissioner shall have cognizance and control of the government, administration, disposition and discipline of the police department, and of the police force of the department. The commissioner shall be the chief executive officer of the police force.  He shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department.

19.     The NYPD Commissioner has custody of the precincts and Central Booking facilities located within the City of New York, including but not limited to the 42nd Precinct and Bronx County Central Booking, where the subject incident occurred.

20.     At all times mentioned herein, Defendant Police Officer Galvin Ferguson ("PO Ferguson") was an NYPD police officer[1] employed by the City.

21.     PO Ferguson is sued herein in his individual and official capacities.

22.     At all times mentioned herein, Defendant Police Officer David Terrell ("PO Terrell") was an NYPD police officer employed by the City.

23.     PO Terrell is sued herein in his individual and official capacities.

24.     At all times mentioned herein, Defendant Police Officer "Jane" Vazquez ("PO Vazquez") was an NYPD police officer employed by the City.

25.     PO Vazquez is sued herein in her individual and official capacities.

26.     At all times mentioned herein, Defendant "Police Officers John Does 1-5 of the 42nd Precinct on March 15, 2011" ("PO John Does") were police officers employed by the City.

27.     The identities of the PO John Does are not presently known, but they are believed to be police officers and supervisory personnel endowed and bestowed with various ranks and appointments upon them by the City and/or NYPD, and are sued in their capacities as individuals

---

[1] As used herein, the term "police officer" is intended to refer to New York City Police Department officers in the general and not to any specific rank, title or position.

as well as in their official capacities as police officers acting under the color of law.

28.    The PO John Does were those individuals involved in the excessive use of force, false arrest, false imprisonment, malicious prosecution, and/or unlawful strip search of Plaintiff; the individuals who were witness or aware of the foregoing abuses and failed to act, intervene or mitigate; the individuals who denied and/or delayed Plaintiff's access to medical care and treatment following the incident; the individuals who failed to report or truthfully report the incidents alleged herein; and the individuals who gave false statements or testimony, falsely reported the incident, and/or were part of a cover-up to prevent the truth from coming to light.

29.    Upon information and belief, and at all times mentioned herein, the City and/or NYPD, their agents, servants and/or employees, owned, operated, maintained, managed, supervised, directed and/or controlled the jails and police precincts within the City of New York, including but not limited to Kings Central Booking.

30.    Upon information and belief, and at all times mentioned herein, the City was charged with the hiring, training, retention, direction, supervision, discipline, oversight, appointment and promotion of NYPD officers, supervisors and staff in its employ, including but not limited to the defendant police officers herein.

31.    Upon information and belief, and at all times mentioned herein, the City, its departments, agents, servants and/or employees, managed, supervised, directed and/or controlled the custody, confinement, care and treatment of those persons arrested, confined and/or otherwise detained in its various jails, including but not limited to the plaintiff.

32.    At all times mentioned herein, the defendants assumed the custody, care and control of the plaintiff.

33.    At all times mentioned herein, the defendants were entrusted with the custody and

care of the plaintiff.

34.    At all times hereinafter mentioned, the defendants assumed a duty of care to the plaintiff.

35.    At all times hereinafter mentioned, the defendants owed a duty of care to the plaintiff..

36.    At all times hereinafter mentioned, the defendants owed a special duty of care to the plaintiff.

37.    As alleged herein, the defendants used excessive physical force on Plaintiff; assaulted and battered Plaintiff without legal justification; violated Plaintiff's civil and constitutional rights while acting under color of state law; drafted and filed, or conspired to file, knowingly false incident reports, criminal reports, affidavits, and other records regarding the subject incident; ignored, refused, denied, and/or delayed Plaintiff's requests for medical attention for the injuries alleged herein; gave knowingly false statements; and/or took specific and definitive measures to cover up evidence of their unlawful activities.

## STATEMENT OF FACTS

38.    On March 15, 2011, Plaintiff's infant son was arrested at his school. Plaintiff went to the 42nd Precinct ("the precinct") with her infant daughter in order to be present while her son was questioned by the police. As she was approaching the precinct, Plaintiff heard her son yelling out in pain from within the "bullpen" of the precinct. Plaintiff looked in to the precinct and saw several police officers punching her son in the face and using chemical agents against him while he was handcuffed. Plaintiff screamed out in horror due to what she was seeing and asked the officers why they were punching and pepper spraying her son while he was handcuffed and non-resistant.

39.     Approximately five police officers, upon information and belief Defendants PO Ferguson, PO Terrell, PO Vazquez and PO John Does (collectively referred to as "the defendant police officers"), exited the precinct with what Plaintiff believed to be animus and in intent to retaliate, punish and/or silence Plaintiff from reporting what she had just witnessed.

40.     In fear for her own safety and that of her infant daughter, Plaintiff walked away from the precinct and started walking down the block. The defendant police officers pursued Plaintiff and caught up to her.

41.     Without warning, one of the defendant police officers – a black male, approximately 6'3" tall, with a bald or shaved head, and in his late 30s or early 40s – grabbed Plaintiff by her right arm, bear hugged her around her waist, picked her up into the air, and slammed her down to the sidewalk. Plaintiff landed on her back and hit her head on the sidewalk, causing Plaintiff to suffer physical injuries.

42.     The defendant police officers pursued Plaintiff in order to intimidate, punish, discipline, injure and/or retaliate against Plaintiff for what she had seen, heard and said.

43.     Immediately prior to this incident, Plaintiff was not a threat, immediate or otherwise, to any of the defendant police officers.

44.     No reasonable police officer would have perceived Plaintiff's conduct to be aggressive or confrontational such that would require or warrant an officer to intentionally strike Plaintiff.

45.     At no time prior to the officer slamming Plaintiff to the sidewalk did any NYPD officer attempt to defuse any perceived situation by issuing a verbal command or warning to Plaintiff or using non-contact techniques. Instead, unreasonable and excessive force was used against Plaintiff.

46.     Accordingly, the defendant police officers subjected Plaintiff to cruel, unusual, inhumane and degrading treatment; to unnecessary and wanton infliction of pain; and their actions were grossly disproportionate to the circumstances then and there existing.

47.     The use of physical force and/or infliction of blows upon Plaintiff was not required in self-defense, in order to maintain order, or to secure or control Plaintiff.

48.     At no point during the time period mentioned herein did Plaintiff neglect or refuse a lawful order of a police officer, nor did she resist or disobey any lawful command of a police officer, nor did she offer violence to any officer, nor did she injure or attempt to injure NYPD personnel or property, nor did she attempt to flee from a crime.

49.     Following the excessive use of force, Plaintiff was handcuffed and taken to the 42nd Precinct, where she was strip searched and placed under arrest.

50.     Several hours later, Plaintiff was transferred from the 42nd Precinct to Bronx Central Booking for further processing and to await arraignment.

51.     On March 17, 2011, Plaintiff was arraigned on misdemeanor charges of resisting arrest and obstructing governmental administration at which time she entered a plea of "Not Guilty". Plaintiff was then released on her own recognizance.

52.     On October 24, 2012, the criminal action unlawfully and maliciously initiated against the plaintiff was dismissed and all criminal charges related to that action were also dismissed.

53.     While in police custody at the 42nd Precinct and then Bronx Central Booking, Plaintiff requested access to reasonable and appropriate medical care, but same was refused.

54.     As alleged herein, Plaintiff suffered physical injuries of an objectively serious and important nature; however, the City, its agents, servants and/or employees, including but not

limited to the defendant police officers, delayed, refused and/or failed to provide timely and adequate medical care and treatment to Plaintiff, nor did Defendants authorize, make arrangements, or provide transportation so Plaintiff could receive medical care.

55.     Plaintiff's medical condition was of such gravity that it can be considered a serious medical condition. Defendants, by ignoring Plaintiff's requests for treatment, acted with deliberate indifference.

56.     As a result of the defendants' deliberate indifference, Plaintiff experienced prolonged and significantly increased pain and suffering.

57.     Following the subject incident, the City, its agents, servants and/or employees, including but not limited to the defendant police officers, acting individually and/or in concert and conspiracy with each other, and in an attempt to cover-up and/or conceal their own unlawful conduct and/or in retaliation for Plaintiff exercising her First Amendment rights, did draft, execute and file false official documents and gave false sworn statements, reports and/or testimony regarding the subject incident to NYPD supervisors and the District Attorney's Office for the purpose of and resulting in Plaintiff being arrested, prosecuted and imprisoned and they themselves avoiding investigation and/or discipline in the instance.

58.     As a result of the aforesaid incident, Plaintiff was caused to suffer bodily injuries, deprivation and loss of liberty, pecuniary loss, psychological and emotional injuries, humiliation, shame, and became the object of jeer and derision.

### FIRST CLAIM FOR RELIEF:
### 42 U.S.C. §1983

59.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "58", inclusive, of this Amended Complaint, as if same were fully set forth herein.

60.     As set forth above, the defendant police officers, acting under the color of law, did intimidate, assault, batter and use excessive physical force on Plaintiff; did use force on Plaintiff as punishment; did retaliate against Plaintiff for exercising her First Amendment rights; did falsely arrest and imprison Plaintiff; did maliciously prosecute Plaintiff; did knowingly and maliciously initiate a false criminal action against Plaintiff; did ignore, refuse, deny and/or delay Plaintiff's access to timely and reasonable medical care; did unlawfully strip search Plaintiff; did knowingly draft and/or file false reports, incident reports, criminal complaints and/or affidavits in an effort to cover-up evidence of their unlawful activities; and were deliberately indifferent to Plaintiff's civil rights and medical needs, all without legal cause or justification and with purposeful intent to cause harm to Plaintiff.

61.     Said defendants failed to notify City or federal authorities as to what they had seen and/or heard, as required by law.

62.     Said defendants failed to take appropriate action to investigate and report the subject incident, as required by law.

63.     The subject incident, as well as the defendant officers' ignoring, acquiescence, joining and/or complicity in same, constituted an unnecessary, unreasonable, and excessive use of force.

64.     Said defendants acted with deliberate indifference to the plaintiff's liberty interests, personal safety, security, health and immediate medical needs.

65.     As a direct and proximate result of the defendants' deliberate indifference to Plaintiff's objectively serious medical condition, the plaintiff's resulting physical, psychological and emotional injuries, pain and suffering were significantly exacerbated and her recovery compromised.

66.     As set forth above, these defendants have made every effort to conceal the truth about what actually occurred, including but not limited to covering up, or attempting to cover up, the illegal conduct complained of herein.

67.     The aforesaid acts and omissions violated the plaintiff's clearly established civil rights secured by the United States Constitution and were the direct and proximate cause of the physical, psychological, and emotional injuries she suffered.

68.     The actions of the defendant officers were wanton and malicious in the instance.

69.     Said defendants were deliberately indifferent to Plaintiff's medical condition by their failure to provide access to timely and appropriate medical care. Their conduct was grossly incompetent, inadequate and excessive as to shock the conscience, and was so intolerable to fundamental fairness, and maliciously and sadistically used force to cause harm.

70.     As a result of the foregoing, Plaintiff was caused to be subjected to the deprivations of rights, privileges and/or immunities secured by the Constitution and statutes of the United States of America and has been damaged thereby.

71.     As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, loss of liberty, and pecuniary loss.

## SECOND CLAIM FOR RELIEF:
## 42 U.S.C. §§1985 AND 1986 CONSPIRACY

72.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "71", inclusive, of this Amended Complaint, as if same were fully set forth herein.

73.     The defendant police officers, acting under the color of law, willfully conspired with one another, their supervisors, and the Bronx District Attorney's Office to deprive the

plaintiff of her constitutional rights, including but not limited to her right: to be free from cruel and unusual punishment; to be free from the use of unreasonable and/or excessive force; to be free from false arrest and imprisonment; to be free from malicious prosecution; to be free from unreasonable delay and/or denial of medical attention; to be free from harassment and intimidation; to be free from retaliation for exercising her First Amendment rights; to be free from degrading and humiliating treatment; to be free from unlawful searches and strip searches; to equal protection of the law; to equal privileges and immunities under the law; to associate and speak freely; and to have access to and seek redress in the courts.

74.    It was part of said conspiracy that said defendants did refuse due and necessary medical care and treatment to the plaintiff; did fail to protect the plaintiff from known and/or avoidable harm; did initiate false criminal charges against Plaintiff; did deliberately suppress the truth; and did submit false reports, statements and/or testimony to support and corroborate the fabricated allegations lodged against the plaintiff, for their own benefit.

75.    As a result of said conspiracy and/or said defendants' furtherance of the conspiracy, Plaintiff has been injured and deprived of the rights and privileges afforded by the Constitution and statutes of the United States of America.

76.    Said defendants had knowledge that a 42 U.S.C. §1985(3) conspiracy was in progress, had the power to prevent or aid in preventing the conspiracy from continuing, and neglected or refused to do so.

77.    With due diligence, the defendant police officers and other NYPD officials could have promptly reported the subject events to superiors and to duly authorized investigators. Their failure to do so allowed the conspiracy to continue and the truth be suppressed.

78.     Had said defendants complied with the law and furnished truthful information to authorities about their conduct and/or Plaintiff's conduct, the §1985(3) conspiracy would not have succeeded to the extent that it did.

79.     As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, loss of liberty, and pecuniary loss.

### THIRD CLAIM FOR RELIEF:
### MUNICIPAL LIABILITY

80.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "79", inclusive, of this Amended Complaint, as if same were fully set forth herein.

81.     The defendant officers, collectively and individually, while acting under color of state and local law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the City and/or NYPD but which is forbidden by the Constitution of the United States.

82.     That prior to March 15, 2011, the City and NYPD Commissioner developed and maintained customs, policies, usages, practices, procedures and rules that: (a) ignore the civil and statutory rights of persons in their custody and control; (b) deprive persons in their custody and control their constitutional and statutory rights; (c) permit the use of force in an unreasonable, unnecessary, unjustified and excessive manner; (d) fail to adequately instruct and supervise the officers under said defendants' control in the proper and appropriate care and treatment of the public and individuals in their custody and control; (e) fail to adequately instruct and supervise the officers under said defendants' control in searches of persons, including but not limited to strip searches and body cavity searches; (f) inadequately provide for the investigation of complaints of harassment, intimidation, misconduct, excessive use of force, officer abuse,

discrimination, denial and/or delay of medical care, and other misconduct by officers and supervisors, and inadequately punishing the subjects of those complaints which were substantiated; (g) tolerate acts of brutality; (h) operate to insulate officers who engage in criminal or other serious official misconduct from detection, prosecution, and punishment, and are maintained with deliberate indifference; and (i) tolerate officers and supervisors who engage in a pattern and practice of actively and passively covering up misconduct by fellow officers, thereby establishing and perpetuating a "code of silence", which has become so ingrained in the defendants so as to constitute a policy of the City and NYPD.

83.     The City and NYPD have failed to train (and/or retrain in those instances where sound judgment would prevail) their officers how to determine probable cause; how to engage in respectful, courteous and non-violent interactions with the public; how to de-escalate a tense situation rather than enflaming it with threats, rhetoric and violence; how to recognize and react to situations where force is not required as opposed to those situations where force is required; how to utilize force in a lawful, proportionate and appropriate manner; how and when to make medical care available to arrested individuals; how, where, when and why to conduct a strip search of an arrested individual and who is authorized to conduct said searches; in knowing and applying the quantum of force set forth in the NYPD's Patrol Guide; and in failing to be trained and/or retrained in various other aspects of what is expected of an officer and his/her duties as set forth in the Patrol Guide. The foregoing training and retraining failures led to Plaintiff's assault, battery, false arrest, false imprisonment, malicious prosecution, strip search, and denial/delay of medical care.

84.   The City and NYPD not only condone officer violence, but the entrenched cultures of the department promotes, facilitates, and encourages it. Indeed, NYPD officers cruelly use violence as a management tool.

85.   The City's long-standing failure and/or refusal to train and supervise the police officers under its control, including supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein. It is this policy or custom of abuse and cover-up that has caused or contributed to the deprivation of the plaintiff's rights.

86.   Said policy or custom is further evidenced by frequent and significant findings of misconduct over a period of years by commissioners, command personnel, supervisors, and the officers they supervise and the failures and refusals of the City and NYPD to hold these supervisors and officers accountable. This is the proximate cause of the injuries sustained by the plaintiff, and undoubtedly hundreds of other persons.

87.   Through promotions and other financial and status incentives, the City and NYPD have the power to reward officers who perform their jobs adequately and to punish – or at the very least fail to reward – those who do not. The City and NYPD's actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of officer harassment and intimidation, excessive use of force, malicious prosecution, discriminatory conduct, cover-up, medical neglect, or other misconduct, and fails to investigate these incidents, will suffer no damage to his or her career or financial penalty.

88.   The pattern of unchecked abuse by officers and supervisory staff, the extent to which these unlawful practices have been adopted by significant numbers of the staff, and the

persistent failure or refusal of the City and NYPD to supervise these persons properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the misconduct claimed by the plaintiff

89.     The foregoing customs, policies, usages, practices, procedures and rules of the City and NYPD constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

90.     The foregoing customs, policies, usages, practices, procedures and rules of the City and NYPD were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

91.     Prior to and at the time of the subject dates of incident, there existed a pattern and practice of harassment, intimidation, excessive use of physical force, malicious prosecution, violation of civil rights, unlawful strip searches, cover-up and conspiracy to cover-up unlawful conduct, refusals and/or failures to provide medical care or make medical care timely available, failures to conduct unbiased and thorough investigations of same and to discipline staff meaningfully and promptly for misconduct, and the long-standing failure or refusal to supervise officers, including supervisory staff, are now so institutionalized as to constitute a policy or custom of tolerating and authorizing the wrongs alleged herein.  It is this policy or custom of abuse and cover-up that has caused the deprivation of Plaintiff's constitutional rights.

92.     The City and NYPD have failed or refused to hold accountable high-ranking supervisors (i.e., sergeants, lieutenants, captains, assistant deputy commissioners, deputy commissioners, and commissioners) in the face of frequent and significant misconduct, over a period of years, by these supervisors and by the officers they supervise.  This failure has

subjected Plaintiff and other members of the public to the constitutional and statutory violations alleged herein.

93.     The supervisory staff within the NYPD, as well as the command structure, knew and/or know that the pattern of indifference to officer violence, officer harassment, intimidation, physical abuse, initiating false criminal actions, cover-up, and delay and denial of medical care, as described above, existed and still exists within the NYPD.  The failure of the City and NYPD to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of their officers.  The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action despite the fact that the foregoing has been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of all individuals in their custody, and Plaintiff in particular.

94.     The NYPD operates under a system-wide policy.  With some exceptions, the NYPD trains all of its officers at its Training Academy according to a uniform curriculum; maintains a centralized Investigation Division to investigate allegations such as those contained herein under uniform procedures; and maintains a centralized unit to conduct administrative prosecutions (or to decline to prosecute, or to plea-bargain) in those few instances where the NYPD substantiates the allegation(s). Because the NYPD and its senior officers are aware of and tolerate certain practices by their officers, including those that are inconsistent with formal policy, these practices have become widespread, longstanding, and deeply imbedded in the NYPD culture and constitute unwritten policies and customs.

95.     The supervisory staff of the NYPD has consistently failed to investigate allegations such as those contained herein and to discipline officers who violate NYPD guidelines.  The investigation of these incidents by central office and/or supervisory staff reflects

a bias in favor of uniformed officers. Furthermore, officers and staff who are known to have violated an individual's civil rights in one command are often transferred by NYPD to another command rather than be disciplined, demoted or fired.

96.    Upon information and belief, the pattern of misconduct alleged herein has been condoned by the City and ranking NYPD commanders and supervisors, who have been or are aware of the number, frequency, and severity of these incidents and of the continuing risk of physical injury at the hands of uniformed officers. NYPD Commissioners, precinct commanders, captain and deputies, and supervisors receive and/or received a daily compilation of reports from NYPD commands documenting violent incidents, including an officer's use of force. These reports, which are circulated throughout the NYPD, contain brief summaries of the incident. These summaries have documented, and continue to document, routine uses of force by officers under circumstances which very often suggest that the officers' accounts are fabricated to cover up brutality and other misconduct. These reports routinely document injustices the same or similar to the allegations contained herein, and consistently find no basis to question the officer's conduct, even when an officer's report describes conduct which is proscribed by NYPD written policy or fails to account for the prisoner's injuries.

97.    With rare exception, officers whose misconduct is brought to the attention of supervisory personnel continue to work without any substantial disciplinary action being taken against them.

98.    Although the City and NYPD have computerized systems capable of identifying officers involved in multiple unlawful incidents and/or cover-ups, this information has not been utilized by the City or NYPD Commissioners, commanders or supervisors to reduce the severity or incidence of these events.  The fact that these abuses by officers remain unchecked and

unrestrained leads the staff to believe that they may act with impunity.

99.     Similarly, City and NYPD officials and supervisory staff have consistently failed to investigate complaints made to the department's Internal Affairs Bureau and Civilian Complaint Review Board of officer abuse, harassment, intimidation and disrespect; excessive uses of force; malicious prosecutions; cover-ups; denial and/or delay of medical treatment or other inattention; discourtesy to the public; violations of NYPD directives and guidelines and other misconduct; and have failed to discipline the subjects of those grievances and complaints which were substantiated.

100.   As a proximate and direct cause of the City's conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, loss of liberty, and pecuniary loss.

<div align="center">**JURY DEMAND**</div>

Plaintiff hereby demands a trial by jury of all issues in this matter.

<div align="center">**RELIEF**</div>

Plaintiff requests compensatory damages against all defendants in an amount to be determined at trial, punitive damages against the individual defendants in an amount to be determined at trial, attorney's fees, costs and disbursements pursuant to law, and such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
      October 2, 2014

<div style="margin-left: 40%;">

Yours, etc.,

**HELD & HINES, L.L.P.**

By: Philip M. Hines, Esq.
*Attorneys for Plaintiff*
Office and P.O. Address

</div>

2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700

## VERIFICATION

STATE OF NEW YORK     )
                             ) **ss:**
COUNTY OF NEW YORK   )

**CHARMAINE DIXON,** being duly sworn deposes and says:

That deponent is the plaintiff in the within action; that deponent has read the foregoing **VERIFIED AMENDED COMPLAINT** and knows the contents thereof, that same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

CHARMAINE DIXON

Sworn to before me this 2nd
day of October, 2014

NOTARY PUBLIC

PHILIP MICHAEL HINES
Notary Public, State of New York
No. 02HI6293058
Qualified in Kings County
Commission Expires November 18, 2017

EXHIBIT A

PRO SE Intake Unit
# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK
DANIEL PATRICK MOYNIHAN UNITED STATES COURTHOUSE
500 PEARL STREET, ROOM 200
NEW YORK, NEW YORK 10007

RUBY J. KRAJICK
CLERK OF COURT

Re: _Dixon_ _v. Sobaro Mangenant, et al._

Dear Litigant:

Please be advised that your papers were received by the *Pro Se* Intake Unit on **MAR – 6 2014**
If there are any problems with your papers, they may be returned to you.

If your papers are in order, they will be processed and assigned a docket number and a judge. You will be notified by mail when this is done. Unless directed by the Court, please **"DO NOT"** submit any other papers until you have been assigned a docket.

If you have any questions regarding these procedures, you may contact this Office by letter or by telephone during our normal business hours, 8:30 a.m. – 5:00 p.m., Monday – Friday (except federal holidays). Please note that we **cannot** accept collect calls.

Sincerely,

Coretta

*Pro Se* Intake Clerk
(212) 805-0175

## IMPORTANT NOTE:

**YOU MUST IMMEDIATELY NOTIFY THE COURT OF ANY CHANGE OF YOUR ADDRESS BY SUBMITTING A LETTER TO THE *PRO SE* UNIT OR YOU RISK DISMISSAL OF YOUR CASE.**

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
OFFICE OF THE CLERK
500 PEARL STREET
NEW YORK, NEW YORK 10007

Ruby J. Krajick
Clerk of Court

May 1, 2014

Charmaine Dixon
1778 Southern Blvd # 4E
Bronx, NY 10460

Re:     *Dixon v. Sabaro Management, et al.,*

Dear Ms. Dixon:

I am writing in response to your letter received in the chambers of the Honorable Loretta A. Preska, Chief United States District Judge on April 28, 2014. Your letter was forwarded to my attention so that I may assist you.

In your letter you indicated you "submitted a claim on March 6, 2014 and came back nine business days to receive case number and was told that claim was lost."

Upon receipt of your letter, I requested a search be conducted in an effort to locate your claim. Your claim, as of the date of this letter, has not been located.

In an effort to assist you, please resubmit your claim and an *in forma pauperis* application. If you have a copy of the claim and the *in forma pauperis* you submitted on March 6, 2014, please sign both documents in original ink and send them to the Clerk's Office at the above address to my attention. In the event you do not have another *in forma pauperis* application, I am enclosing one for your use.

If you have any questions, I can be reached at (212) 805-0140.

Sincerely,

Richard Wilson
Chief Deputy Clerk, Administration

enclosure

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CHARMAINE DIXON,

Docket No. 14 CV 4930 (LAP)

Plaintiff,

-against-

CITY OF NEW YORK, POLICE OFFICER GALVIN
FERGUSON, Shield No. 2902, individually and in his
official capacity, POLICE OFFICER DAVID TERRELL,
Shield No. 16032, individually and in his official capacity,
POLICE OFFICER "JANE" VAZQUEZ, individually and
in her official capacity, and POLICE OFFICERS "JOHN
DOES 1-5" OF THE 42ND PRECINCT ON MARCH 15,
2011, individually and in their official capacities, fictitious
names used to identify presently unknown police officers,

Defendants.
------------------------------------------------------------------------X

## VERIFIED AMENDED COMPLAINT

**HELD & HINES, LLP**
**Attorneys for Plaintiff(s)**
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

Signature (Rule 130-1.1-a)

PHILIP M. HINES, ESQ.