UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHARMAINE DIXON,

                          Plaintiff,

      -against-

CITY OF NEW YORK, POLICE OFFICER GALVIN
FERGUSON, Shield No. 2902, individually and in his
official capacity, POLICE OFFICER DAVID TERRELL,
Shield No. 16032, individually and in his official capacity,
and POLICE OFFICER "JANE" VAZQUEZ, individually
and in her official capacity,

                        Defendants.
------------------------------------------------------------------X

Docket No. 14 CV 4930 (LAP)

**PLAINTIFF'S SECOND
VERIFIED AMENDED
COMPLAINT**

Jury Trial Demanded

        Plaintiff, CHARMAINE DIXON, by her attorneys, HELD & HINES, LLP, as and for her Second Verified Amended Complaint, hereinafter states and alleges as follows upon information and belief:

## PRELIMINARY STATEMENT

      1.    Plaintiff commences this action seeking compensatory damages, punitive damages, and attorney's fees for violations of her civil, statutory and common law rights by the defendants, while acting under color of law, as said rights are secured by the Constitution of the United States of America, 42 U.S.C. §1983 *et seq.*

      2.    On or about March 15, 2011, Plaintiff was the victim of an excessive use of force by the defendant police officers, acting under color of law, in front of her infant daughter. Plaintiff was then falsely arrested, imprisoned and maliciously prosecuted by the defendants. Following arraignment on March 17, 2011, Plaintiff was released on her own recognizance. All charges against Plaintiff were dismissed on October 24, 2012 and her record sealed.

3.     As a result of the aforesaid incident, Plaintiff was caused to suffer bodily injuries, deprivation and loss of liberty, loss of familial relations, pecuniary loss, psychological and emotional injuries, humiliation, shame, and became the object of jeer and derision.

## JURISDICTION AND VENUE

4.     This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1986 and 1988 and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America.

5.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3) and (4) and the aforesaid statutory and constitutional provisions.

6.     Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C. §1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. §1983.

7.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred within Bronx County, New York, which is within this judicial district.

8.     Plaintiff timely commenced this action *pro se* by filing her Complaint with this Court's Pro Se Intake Unit on March 6, 2014. Plaintiff received an acknowledgement of receipt of same on that date. See, Ex. A.

9.     In response to Plaintiff's letter received by the Court on April 28, 2014, informing that she had "submitted a claim on March 6, 2014 and came back nine business days to receive case number and was told that claim was lost", by letter dated May 1, 2014, Richard Wilson, Chief Deputy Clerk, Administration, advised Plaintiff that a search was conducted to locate her

claim but it had not, as of that date, been located. Mr. Wilson instructed Plaintiff to resubmit her claim and an *in forma pauperis* application. <u>See</u>, Ex. B.

10.     On July 1, 2014, Plaintiff resubmitted her Complaint *pro se* and modified the caption to reflect the City of New York as a party.

11.     By Order of the Hon. Loretta A. Preska, Chief United States District Judge, dated August 8, 2014, Plaintiff was directed to file an amended complaint within sixty (60) days of said order.

12.     By Order of the Hon. Paul G. Gardephe, U.S.D.J., dated March 16, 2016, Plaintiff was granted leave to file a Second Amended Complaint by April 15, 2016.

13.     Plaintiff's Second Amended Complaint is timely.

## PARTIES

14.     At all times mentioned herein, the plaintiff was and remains a resident of the State of New York.

15.     Upon information and belief, and at all times mentioned herein, the defendant, City of New York (hereinafter referred to as the "City"), was and remains a body corporate and politic, constituting a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.

16.     Upon information and belief, and at all times mentioned herein, the City maintains the New York City Police Department (hereinafter referred to as the "NYPD"), pursuant to law.

17.     Pursuant to Section 434 of the New York City Charter ("Charter"), the NYPD Commissioner shall have cognizance and control of the government, administration, disposition and discipline of the police department, and of the police force of the department. The

commissioner shall be the chief executive officer of the police force.  He shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department.

18.     The NYPD Commissioner has custody of the precincts and Central Booking facilities located within the City of New York, including but not limited to the 42nd Precinct and Bronx County Central Booking, where the subject incident occurred.

19.     At all times mentioned herein, Defendant Police Officers Galvin Ferguson ("PO Ferguson"), David Terrell ("PO Terrell"), and "Jane" Vazquez ("PO Vazquez") were NYPD police officers[1] employed by the City, and are sued in their individual and official capacities.

20.     Upon information and belief, and at all times mentioned herein, the City and/or NYPD, their agents, servants and/or employees, owned, operated, maintained, managed, supervised, directed and/or controlled the jails and police precincts within the City of New York, including but not limited to Kings Central Booking.

21.     Upon information and belief, and at all times mentioned herein, the City was charged with the hiring, training, retention, direction, supervision, discipline, oversight, appointment and promotion of NYPD officers, supervisors and staff in its employ, including but not limited to the defendant police officers herein.

22.     Upon information and belief, and at all times mentioned herein, the City, its departments, agents, servants and/or employees, managed, supervised, directed and/or controlled the custody, confinement, care' and treatment of those persons arrested, confined' and/or otherwise detained in its various jails, including but not limited to the plaintiff.

23.     At all times mentioned herein, the defendants assumed the custody, care and

---

[1] As used herein, the term "police officer" is intended to refer to all members of service of the New York City Police Department in the general and not to any specific rank, title or position.

control of the plaintiff.

24.    At all times mentioned herein, the defendants were entrusted with the custody and care of the plaintiff.

25.    At all times hereinafter mentioned, the defendants assumed a duty of care to the plaintiff.

26.    At all times hereinafter mentioned, the defendants owed a duty of care to the plaintiff.

27.    At all times hereinafter mentioned, the defendants owed a special duty of care to the plaintiff.

### STATEMENT OF FACTS

28.    On March 15, 2011, Plaintiff's infant son was arrested at his school. Plaintiff went to the 42nd Precinct ("the precinct") with her infant daughter in order to be present while her son was questioned by the police. As she was approaching the precinct, Plaintiff heard her son yelling out in pain from within the "bullpen" of the precinct. Plaintiff looked into the precinct window and saw several police officers punching her son in the face and using chemical agents against him while he was handcuffed. Plaintiff screamed out in horror due to what she was seeing and asked the officers why they were punching and pepper spraying her son while he was handcuffed and non-resistant.

29.    Approximately five police officers, including Defendants PO Ferguson, PO Terrell, PO Vazquez (collectively referred to as "the defendant police officers"), exited the precinct with animus and an intent to retaliate, punish and/or silence Plaintiff from reporting what she had just witnessed.

30.    In fear for her own safety and that of her infant daughter, Plaintiff walked away

from the precinct and started walking down the block. The defendant police officers pursued Plaintiff and caught up to her.

31.     Without warning, one of the defendant police officers – a black male, approximately 6'3" tall, with a bald or shaved head, and in his late 30s or early 40s – grabbed Plaintiff by her right arm, bear hugged her around her waist, picked her up into the air, and slammed her down to the sidewalk. Plaintiff landed on her back and hit her head on the sidewalk, causing Plaintiff to suffer physical injuries.

32.     The defendant police officers pursued Plaintiff with malicious intent to intimidate, punish, discipline, injure and/or retaliate against Plaintiff for what she had seen, heard, and said.

33.     Immediately prior to this incident, Plaintiff was not a threat, immediate or otherwise, to any of the defendant police officers.

34.     No reasonable police officer would have perceived Plaintiff's conduct to be aggressive or confrontational such that would require or warrant an officer to intentionally strike Plaintiff.

35.     At no time prior to the officer slamming Plaintiff to the sidewalk did any NYPD officer attempt to defuse any perceived situation by issuing a verbal command or warning to Plaintiff or using non-contact techniques. Instead, unreasonable and excessive force was used against Plaintiff.

36.     Accordingly, the defendant police officers subjected Plaintiff to cruel, unusual, inhumane and degrading treatment; to unnecessary and wanton infliction of pain; and their actions were grossly disproportionate to the circumstances then and there existing.

37.     The use of physical force and/or infliction of blows upon Plaintiff was not required in self-defense, in order to maintain order, or to secure or control Plaintiff.

38.     At no point during the time period mentioned herein did Plaintiff neglect or refuse a lawful order of a police officer, nor did she resist or disobey any lawful command of a police officer, nor did she offer violence to any officer, nor did she injure or attempt to injure NYPD personnel or property, nor did she attempt to flee from a crime.

39.     Following the excessive use of force, Plaintiff was handcuffed and taken to the 42nd Precinct, where she was strip searched and placed under arrest.

40.     Several hours later, Plaintiff was transferred from the 42nd Precinct to Bronx Central Booking for further processing and to await arraignment.

41.     On March 17, 2011, Plaintiff was arraigned on misdemeanor charges of resisting arrest and obstructing governmental administration, at which time she entered a plea of "Not Guilty." Plaintiff was then released on her own recognizance.

42.     On October 24, 2012, the criminal action unlawfully and maliciously initiated against the plaintiff was dismissed and all criminal charges related to that action were also dismissed.

43.     While in police custody at the 42nd Precinct and then Bronx Central Booking, Plaintiff requested access to reasonable and appropriate medical care, but same was recklessly refused.

44.     Following the subject incident, the City, its agents, servants and/or employees, including but not limited to the defendant police officers, acting individually and/or in concert and conspiracy with each other, and in an attempt to cover-up and/or conceal their own unlawful conduct and/or in retaliation for Plaintiff exercising her First Amendment rights, did draft, execute and file false official documents and gave false sworn statements, reports and/or testimony regarding the subject incident to NYPD supervisors and the District Attorney's Office

for the purpose of and resulting in Plaintiff being arrested, prosecuted and imprisoned and they themselves avoiding investigation and/or discipline in the instance.

45.     As a result of the aforesaid incident, Plaintiff was caused to suffer bodily injuries, deprivation and loss of liberty, loss of familial relations, pecuniary loss, psychological and emotional injuries, humiliation, shame, and became the object of jeer and derision.

### FIRST CLAIM FOR RELIEF:
### 42 U.S.C. §1983 – MALICIOUS PROSECUTION

46.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "45", inclusive, of this 2nd Amended Complaint, as if same were fully set forth herein.

47.     As set forth above, the defendant police officers, acting under the color of law, did retaliate against Plaintiff for exercising her First Amendment rights; did act with malice towards Plaintiff; did maliciously and without probable cause, falsely arrest and initiated criminal prosecution against Plaintiff; did knowingly file false  official including, incident reports, incident reports, arrest and criminal complaints, and affidavits in order to initiate a criminal proceeding against the Plaintiff; did take the aforesaid steps in an effort to cover-up evidence of their unlawful activities in the instance; and were deliberately indifferent to Plaintiff's civil rights, all without legal cause or justification and with purposeful intent to cause harm to Plaintiff.

48.     As set forth above, the criminal action and all charges brought against the Plaintiff were dismissed.

49.     The defendant police officers were under a legal obligation to notify City and federal authorities of the defendants' abuses of authority, which they had seen and/or heard, but failed to report, resulting in harm to the Plaintiff.

50.     Said defendants acted with deliberate indifference to the plaintiff's liberty interests, personal safety, security, health and immediate medical needs.

51.     Said defendants acted in complete seizure and/or perversion of proper legal procedures implicating the Plaintiff's personal liberty and privacy interests accorded to her under the Fourth Amendment of the US Constitution.

52.     As set forth above, these defendants have made every effort to conceal the truth about what actually occurred, including but not limited to covering up, or attempting to cover up, the illegal conduct complained of herein.

53.     In arresting and prosecuting the Plaintiff, the defendant police officers made such material and false statements in their reports indicating, falsely, that the Plaintiff attempted to open a window within the 42nd Precinct; that the Plaintiff refused to back away from said window and declared that she was not leaving; and that the Plaintiff resisted arrest by clenching her arms to her body to avoid being handcuffed, where in actuality, defendant officers put her into a bear hug and slammed her into the sidewalk on a city street.

54.     On March 17, 2011, at 23:57, P.O. Calvin Ferguson of the 42nd Precinct prepared and signed a report embodying all of the material, false statements and accounts maintained by the defendant police officers mentioned herein.

55.     This document and subsequent documents referring to this document were used to perpetuate the malicious prosecution of the Plaintiff.

56.     The aforesaid acts and omissions violated the plaintiff's clearly established civil rights secured by the United States Constitution and were the direct and proximate cause of the physical, psychological, and emotional injuries she suffered.

57.     The actions of the defendant officers were wanton and malicious in the instance.

58.     As a result of the foregoing, Plaintiff was caused to be subjected to the deprivations of rights, privileges and/or immunities secured by the Constitution and statutes of the United States of America and has been damaged thereby.

59.     As a proximate and direct cause of said defendants' conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, loss of liberty, loss of familial relations, and pecuniary loss.

### SECOND CLAIM FOR RELIEF:
### MUNICIPAL LIABILITY

60.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "59", inclusive, of this 2nd Amended Complaint, as if same were fully set forth herein.

61.     The defendant officers, collectively and individually, while acting under color of state and local law, engaged in conduct – in the use of excessive force and for the unlawful, malicious prosecution of the Plaintiff - that constituted a custom, usage, practice, procedure or rule of the City and NYPD, but which is forbidden by the Constitution of the United States.

62.     That prior to March 15, 2011, the City, through the NYPD, developed and maintained customs, policies, usages, practices, procedures and rules that: (a) ignore the civil and statutory rights of persons in their custody and control; (b) deprive persons in their custody and control their constitutional and statutory rights; (c) permit the use of force in an unreasonable,

unnecessary, unjustified and excessive manner; (d) fail to adequately instruct and supervise the officers under said defendants' control in the proper and appropriate care and treatment of prisoners in their custody and control, including provide access to medical care when necessary; (e) fail to adequately instruct and supervise the officers under said defendants' control in communicating with, understanding and gaining compliance from mentally ill prisoners; (f) inadequately provide for the investigation of complaints of harassment, intimidation, misconduct, excessive use of force, unlawful strip search, officer abuse, discrimination, denial and/or delay of medical care, refusals to provide reasonable accommodations, and other misconduct by officers and supervisors, and inadequately punishing the subjects of those complaints which were substantiated; (g) tolerate acts of brutality; (h) operate to insulate officers who engage in criminal or other serious official misconduct from detection, prosecution, and punishment, and are maintained with deliberate indifference; (i) tolerate officers and supervisors who engage in a pattern and practice of actively and passively covering up misconduct by fellow officers, thereby establishing and perpetuating a "code of silence", which has become so ingrained in the defendants so as to constitute a policy of the City, NYPD; (j) discriminate against disabled prisoners; and (k) have a lack of understanding and respect for mentally ill prisoners, their conditions and needs; (l) allow and tolerate the development and continuation of false and malicious prosecution of citizens.

63.     The City and NYPD have failed to train (and/or retrain in those instances where sound judgment would prevail) their officers how to determine probable cause; how to engage in respectful, courteous and non-violent interactions with the public; how to de-escalate a tense situation rather than enflaming it with threats, rhetoric and violence; how to recognize and react to situations where force is not required as opposed to those situations where force is required;

how to utilize force in a lawful, proportionate and appropriate manner; how and when to make medical care available to arrested individuals; how, where, when and why to conduct a strip search of an arrested individual and who is authorized to conduct said searches; in knowing and applying the quantum of force set forth in the NYPD's Patrol Guide; and in failing to be trained and/or retrained in various other aspects of what is expected of an officer and his/her duties as set forth in the Patrol Guide. The foregoing training and retraining failures led to Plaintiff's assault, battery, false arrest, false imprisonment, malicious prosecution, strip search, and denial/delay of medical care.

64.    The City and NYPD not only condone officer violence, but the entrenched cultures of the department promotes, facilitates, and encourages it. Indeed, NYPD officers including the defendant police officers cruelly use violence as a management tool.

65.    The City's long-standing failure and/or refusal to train and supervise the police officers under its control, including supervisory staff, is now so institutionalized as to constitute a policy or custom of tolerating and authorizing the type of abuse alleged herein. It is this policy or custom of abuse and cover-up that has caused or contributed to the deprivation of the plaintiff's rights.

66.    Said policy or custom is further evidenced by frequent and significant findings of misconduct over a period of years by commissioners, command personnel, supervisors, and the officers they supervise and the failures and refusals of the City and NYPD to hold these supervisors and officers accountable. This is the proximate cause of the injuries sustained by the plaintiff, and undoubtedly hundreds of other persons.

67.    Through promotions and other financial and status incentives, the City and NYPD have the power to reward officers who perform their jobs adequately and to punish – or at the

very least fail to reward – those who do not. The City and NYPD's actions and omissions have created and maintained the perception among high-ranking supervisors that a supervisor who turns a blind eye towards evidence of officer harassment and intimidation, excessive use of force, malicious prosecution, discriminatory conduct, cover-up, medical neglect, or other misconduct, and fails to investigate these incidents, will suffer no damage to his or her career or financial penalty.

68.     The pattern of unchecked abuse by officers and supervisory staff, the extent to which these unlawful practices have been adopted by significant numbers of the staff, and the persistent failure or refusal of the City and NYPD to supervise these persons properly and to take action to curb the misconduct, demonstrates a policy of deliberate indifference which tacitly authorizes the misconduct claimed by the plaintiff.

69.     The foregoing customs, policies, usages, practices, procedures and rules of the City and NYPD constituted deliberate indifference to the safety, well-being and constitutional rights of the plaintiff and were the direct and proximate cause of the constitutional violations suffered by the plaintiff as alleged herein.

70.     The foregoing customs, policies, usages, practices, procedures and rules of the City and NYPD were the moving force behind the constitutional violations suffered by the plaintiff as alleged herein.

71.     Prior to and at the time of the subject dates of incident, there existed a pattern and practice of harassment, intimidation, excessive use of physical force, malicious prosecution, violation of civil rights, unlawful strip searches, cover-up and conspiracy to cover-up unlawful conduct, refusals and/or failures to provide medical care or make medical care timely available, failures to conduct unbiased and thorough investigations of same and to discipline staff

meaningfully and promptly for misconduct, and the long-standing failure or refusal to supervise officers, including supervisory staff, are now so institutionalized as to constitute a policy or custom of tolerating and authorizing the wrongs alleged herein.  It is this policy or custom of abuse and cover-up that has caused the deprivation of Plaintiff's constitutional rights.

72.    The City and NYPD have failed or refused to hold accountable high-ranking supervisors (i.e., sergeants, lieutenants, captains, assistant deputy commissioners, deputy commissioners, and commissioners) in the face of frequent and significant misconduct, over a period of years, by these supervisors and by the officers they supervise.  This failure has subjected Plaintiff and other members of the public to the constitutional and statutory violations alleged herein.

73.    The supervisory staff within the NYPD, as well as the command structure, knew and/or know that the pattern of indifference to officer violence, officer harassment, intimidation, physical abuse, initiating false criminal actions, cover-up, and delay and denial of medical care, as described above, existed and still exists within the NYPD.  The failure of the City and NYPD to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of their officers.  The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action despite the fact that the foregoing has been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of all individuals in their custody, and Plaintiff in particular.

74.    The NYPD'operates under a system-wide policy.  With some exceptions, the NYPD trains all of its officers at its Training Academy according to a uniform curriculum; maintains a centralized Investigation Division to investigate allegations such as those contained herein under uniform procedures; and maintains a centralized unit to conduct administrative

prosecutions (or to decline to prosecute, or to plea-bargain) in those few instances where the NYPD substantiates the allegation(s). Because the NYPD and its senior officers are aware of and tolerate certain practices by their officers, including those that are inconsistent with formal policy, these practices have become widespread, longstanding, and deeply imbedded in the NYPD culture and constitute unwritten policies and customs.

75.    Commissioner Bratton has acknowledged the NYPD's failure to properly train its officers and monitor interaction between officers and the public. Recently, an investigative report released by the New York City Department of Investigation, Office of the Inspector General for the NYPD, dated October 1, 2015, entitled *Police Use of Force in New York City: Findings and Recommendations on NYPD's Policies and Practices* ("OIG-NYPD Report"), reached the following conclusions regarding the NYPD's use-of-force policies, practices, training, and discipline:

> ·   NYPD's current use-of-force policy is vague and imprecise, providing little guidance to individual officers on what actions constitute force. NYPD's current use-of-force Patrol Guide procedure, which is barely more than a page of text, is completely silent on what actions constitute "force." The Patrol Guide likewise prohibits "excessive force" while offering no clarity on what constitutes "excessive force."

> ·   NYPD's current procedures for documenting and reporting force incidents are fragmented across numerous forms, and officers frequently use generic language that fails to capture the specifics of an encounter. The lack of a centralized, uniform use-of-force reporting mechanism leaves...NYPD without adequate data regarding police officer use of force. It is currently impossible to accurately and comprehensively track the use of force by NYPD officers.

> ·   NYPD's Patrol Guide does not properly instruct officers to de-escalate encounters with the public.

· NYPD training does not adequately focus on de-escalation. There is little to no substantive focus on de-escalation in NYPD's training programs.

· In the period reviewed, NYPD frequently failed to impose discipline even when provided with evidence of excessive force. NYPD imposed no discipline with respect to 37 of 104, or 35.6%, of substantiated allegations in which OIG-NYPD's independent review confirmed that officers used excessive force that was not warranted under the circumstances. For those cases decided in the four years between 2010 and 2013, NYPD declined to impose discipline in 34 of 77 allegations, or 44.1% of the time.

· NYPD and CCRB continue to disagree on how officers should be held accountable for use of excessive force... Across 92 substantiated use-of-force allegations, NYPD departed downward from CCRB's disciplinary recommendations – or imposed no disciplinary action whatsoever – 67.4% of the time.

· NYPD should publish an annual report addressing the use of force by officers...Such a report would promote greater transparency and accountability while allowing NYPD to consolidate and learn from data on use of force.

76.    The supervisory staff of the NYPD has consistently failed to investigate allegations such as those contained herein and to discipline officers who violate NYPD guidelines.  The investigation of these incidents by central office and/or supervisory staff reflects a bias in favor of uniformed officers.  Furthermore, officers and staff who are known to have violated an individual's civil rights in one command are often transferred by NYPD to another command rather than be disciplined, demoted or fired.

77.    Upon information and belief, the pattern of misconduct alleged herein has been condoned by the City and ranking NYPD commanders and supervisors, who have been or are aware of the number, frequency, and severity of these incidents and of the continuing risk of

physical injury at the hands of uniformed officers. NYPD Commissioners, precinct commanders, captain and deputies, and supervisors receive and/or received a daily compilation of reports from NYPD commands documenting violent incidents, including an officer's use of force. These reports, which are circulated throughout the NYPD, contain brief summaries of the incident. These summaries have documented, and continue to document, routine uses of force by officers under circumstances which very often suggest that the officers' accounts are fabricated to cover up brutality and other misconduct. These reports routinely document injustices the same or similar to the allegations contained herein, and consistently find no basis to question the officer's conduct, even when an officer's report describes conduct which is proscribed by NYPD written policy or fails to account for the prisoner's injuries.

78.   With rare exception, officers whose misconduct is brought to the attention of supervisory personnel continue to work without any substantial disciplinary action being taken against them.

79.   Although the City and NYPD have computerized systems capable of identifying officers involved in multiple unlawful incidents and/or cover-ups, this information has not been utilized by the City or NYPD Commissioners, commanders or supervisors to reduce the severity or incidence of these events.  The fact that these abuses by officers remain unchecked and unrestrained leads the staff to believe that they may act with impunity.

80.   Similarly, City and NYPD officials and supervisory staff have consistently failed to investigate complaints made to the department's Internal Affairs Bureau and Civilian Complaint Review Board of officer abuse, harassment, intimidation and disrespect; excessive uses of force; malicious prosecutions; cover-ups; denial and/or delay of medical treatment or other inattention; discourtesy to the public; violations of NYPD directives and guidelines and

other misconduct; and have failed to discipline the subjects of those grievances and complaints which were substantiated.

81.    The Plaintiff in this action has suffered damages as a result of an affirmative causal link between the customs and practices of the City and the NYPD as stated herein.  The 42nd Precinct and the named defendant police officers of the 42nd Precinct at the time of this instance, upon information and belief, have exhibited or have been accused of exhibiting with insufficient investigation by the City, a prior history of similar conduct as the instant case, and with the City's and the NYPD's apparent failure to maintain customs, policies, usages, practices, procedures and rules to prevent these acts from happening, as a proximate and direct cause of the City's conduct, the plaintiff suffered and continues to suffer physical, psychological and emotional injuries, loss of liberty, and pecuniary loss.

82.    The OIG-NYPD Report cited above incorporates and includes the 42nd Precinct and the named defendant police officers of the 42nd Precinct at the time of this instance.

83.    The defendant police officers unlawfully, excessively, and maliciously used the unauthorized use of force against the Plaintiff; then subsequently initiated and participated in the malicious prosecution of the Plaintiff; all while benefiting from the City's and the NYPD's failure to maintain the customs, policies, usages, practices, procedures, and rules to prevent such acts from happening, to the extreme detriment to the Plaintiff.

84.    Accordingly, the Plaintiff is entitled to relief, as set forth herein, against the defendants under Municipal Liability.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues in this matter.

## <u>RELIEF</u>

Plaintiff requests compensatory damages against all defendants in an amount to be determined at trial, punitive damages against the individual defendants in an amount to be determined at trial, attorney's fees, costs and disbursements pursuant to law, and such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
      April 15, 2016

                                          Yours, etc.,

                                          **HELD & HINES, L.L.P.**

                                                **/S/**
                                        By: Philip M. Hines, Esq.
                                        *Attorneys for Plaintiff*
                                        Office and P.O. Address
                                        2004 Ralph Avenue
                                        Brooklyn, New York 11234
                                        (718) 531-9700

## VERIFICATION

STATE OF NEW YORK       )
                             )  **ss:**

COUNTY OF NEW YORK    )

    **CHARMAINE DIXON,** being duly sworn deposes and says:

    That deponent is a Plaintiff in the within action; that deponent has read the foregoing **SECOND AMENDED COMPLAINT,** and knows the contents thereof, that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes to be true.

                                            **CHARMAINE DIXON**

Sworn to before me this
15th day of APRIL, 2016

Notary Public

PHILIP MICHAEL HINES
Notary Public, State of New York
No. 02HI6293058
Qualified in Kings County
Commission Expires November 18, 20 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHARMAINE DIXON,

                             Docket No. 14 CV 4930 (LAP)

                    Plaintiff,

     -against-

CITY OF NEW YORK, POLICE OFFICER GALVIN
FERGUSON, Shield No. 2902, individually and in his
official capacity, POLICE OFFICER DAVID TERRELL,
Shield No. 16032, individually and in his official capacity,
POLICE OFFICER "JANE" VAZQUEZ, individually and
in her official capacity, and POLICE OFFICERS "JOHN
DOES 1-5" OF THE 42ND PRECINCT ON MARCH 15,
2011, individually and in their official capacities, fictitious
names used to identify presently unknown police officers,

                    Defendants.
-------------------------------------------------------------------X

## SECOND AMENDED VERIFIED COMPLAINT

**HELD & HINES, LLP**
**Attorneys for Plaintiff(s)**
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

                         **Signature (Rule 130-1.1-a)**

                           /S/
                       **PHILIP M. HINES, ESQ.**