UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
CHARMAINE DIXON,

                              Docket No. 14 CV 4930 (LAP)

                Plaintiff,

   -against-

CITY OF NEW YORK, POLICE OFFICER GALVIN FERGUSON, Shield No. 2902, individually and in his official capacity, POLICE OFFICER DAVID TERRELL, Shield No. 16032, individually and in his official capacity, and POLICE OFFICER "JANE" VAZQUEZ, individually and in her official capacity,

                Defendants.
------------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


HELD & HINES, LLP
2004 Ralph Avenue
Brooklyn, NY 11234
(718) 531-9700
By: Frank Poe, Esq.

## Table of Contents

TABLE OF AUTHORITIES..................................................................................ii
STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................... 1
ARGUMENT............................................................................................................ 3
I.   LEGAL STANDARD ...................................................................................... 3
II.  PLAINTIFF HAS PLAUSIBLY ALLEGED A MALICIOUS PROSECUTION CLAIM............................................................................................................... 5
III. PLAINTIFF HAS PLAUSIBLY ALLEGED A MUNICIPAL LIABILITY CLAIM. 9
CONCLUSION ..................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009) .................................................. 4
Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 407-08 (1997) ................ 9
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). ................................ 4
Brown v. Miller, 519 F.3d 231, 237 (5th Cir. 2008) ................................................................. 6
City of Canton v. Harris, 489 U.S. 378 (1989) ........................................................................ 9
City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) ....................................................... 9
Connecticut v. Am. Elec. Power Co., 582 F.3d 309, 320 (2d Cir. 2009) .................................. 3
Daly v. Ragona, No. 11-CV-3836, 2013 U.S. Dist. LEXIS 97537, 2013 WL 3428185, at *7
   (E.D.N.Y. July 9, 2013) ........................................................................................................ 8
Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002) ............................................................. 5
Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980) ........................................................... 4
Jaghory v. N.Y. State Dept. of Educ., 131 F.3d 326, 329 (2d Cir. 1997) .................................. 3
Kuklachev v. Gelfman, 600 F. Supp. 2d 437 (E.D.N.Y. 2009) ................................................. 4
LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991) .............................................................. 3
Liberty Synergistics, Inc. v. Microflo Ltd., 50 F. Supp. 3d 267, 292 (E.D.N.Y. 2014) ............. 8
Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) ....................................... 5
Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011) ....................................................... 3, 4
Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997) .................................................................. 5
Newton v. City of N.Y., 738 F. Supp. 2d 397 (S.D.N.Y. 2010) ................................................. 6
Newton, ..................................................................................................................................... 7
Papasan v. Allain, 478 U.S. 265 (1986) ................................................................................... 3
Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley
   Inv. Mgmt. Inc., 712 F.3d 705, 717-18 (2d Cir. 2013) ......................................................... 4
Perez v. Duran, 962 F. Supp. 2d 533, 540 (S.D.N.Y. 2013) .................................................... 5
Pinsky v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996) ................................................................. 8
Rohman v. NYCTA, 215 F.3d 208, 215 (2d Cir. 2000) ............................................................. 5
Salahuddin v. Coughlin, 993 F.2d 306 (2d Cir. 1993) ............................................................. 3
Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) .......................................................................... 4
Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015) ........................................................... 3
Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) ................................. 4

**Statutes**

Fed. R. Civ. P. Rule 12(b)(6) ............................................................................................ passim
42 U.S.C. §1983 ................................................................................................................ passim

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

On March 15, 2011, Plaintiff went to the 42nd Precinct, located 830 Washington Avenue, Bronx, New York, with her infant daughter in order to be present while her infant son was questioned by the police following his arrest at school that day. As Plaintiff was approaching the precinct, she heard her son yelling out in pain from within the precinct. Plaintiff looked in to the stationhouse and saw several police officers punching her son in the face and using chemical agents against him while he was handcuffed. Plaintiff screamed out in horror due to what she was seeing and asked the officers why they were punching and pepper spraying her son while he was handcuffed and non-resistant. Then, Defendant Police Officers Ferguson, Terrell, Vazquez and John Does (collectively referred to as "the defendant officers") exited the stationhouse with animus and an intent to retaliate, punish and/or silence Plaintiff from reporting what she had just witnessed. In fear for her own safety and that of her infant daughter, Plaintiff walked away from the precinct and started walking down the block. The defendant officers pursued her and quickly caught up to her and her daughter. Without warning, one of the defendant officers – a black male, approximately 6'3" tall, with a bald or shaved head, and in his late 30s or early 40s – grabbed Plaintiff by her right arm, bear hugged her around her waist, picked her up into the air, and slammed Plaintiff down to the sidewalk. Plaintiff landed on her back and hit her head on the sidewalk, causing physical injuries. Plaintiff was then falsely arrested, imprisoned and maliciously prosecuted by the defendant officers. The defendant officers falsely charged Plaintiff with resisting arrest and obstructing governmental administration (See Exhibit B).

Following this excessive use of force, the defendant officers unlawfully refused Plaintiff's requests for medical attention for physical injuries they caused. Also, the defendant officers unlawfully strip searched Plaintiff while in custody.

Two days later, on March 17, 2011, Plaintiff was arraigned and then released on her own recognizance. All charges against Plaintiff weren't dismissed until October 24, 2012, 19 months later, and her record was sealed. As a result of the aforesaid incident, Plaintiff was caused to suffer bodily injuries, deprivation and loss of liberty, pecuniary loss, psychological and emotional injuries, humiliation, and shame.

On March 6, 2014, Plaintiff filed a *pro se* Complaint against Sobaro Management and the New York City Police Department's 42nd Precinct by delivering her *pro se* Complaint and *in forma pauperis* application to this Court's Pro Se Intake Unit.

In her Complaint, Plaintiff alleged claims against the "42nd Precinct" for the March 15, 2011 excessive use of force incident. Plaintiff also alleged separate, unrelated claims against Sobaro Management, the company that manages the residential building in which she resides. Plaintiff did not make or keep a copy of the *pro se* Complaint and *in forma pauperis* application she had filed, but was given a receipt from Pro Se Intake Clerk "Coretto" acknowledging receipt of her papers. Plaintiff was instructed to return nine (9) days later to check on the status of her Complaint, her application for a fee waiver, and to receive a docket number. When Plaintiff returned nine days later, she was told that her paperwork had been lost. Plaintiff then wrote a letter to the Hon. Loretta A. Preska, Chief United States Judge, informing her of the foregoing. Plaintiff did not make or keep a copy of this letter either; however, by letter dated May 1, 2014, Richard Wilson, Chief Deputy Clerk, Administration, acknowledged Plaintiff's letter in his response. Therein, Mr. Wilson advised Plaintiff that a search was conducted to locate her lost *pro se* Complaint but it had not, as of that date, been found. Mr. Wilson's letter instructed Plaintiff to "resubmit [her] claim and an in forma pauperis application."

As requested, Plaintiff returned to the Pro Se Intake Unit on July 1, 2014 and resubmitted a *pro se* Complaint and *in forma pauperis* application. Therein, Plaintiff named only the City of New York as a defendant, instead of the "42nd Precinct" as in the lost Complaint. Plaintiff did not name Saboro Management as she no longer wished to pursue her claims against that defendant. Plaintiff was then issued the within docket number. Thereafter, Justice Preska *sua sponte* screened Plaintiff's Complaint and issued an Order dated August 8, 2014, which directed Plaintiff to file an amended complaint within sixty (60) days thereof and to name therein the police officers involved in the subject incident. Plaintiff then retained HELD & HINES, LLP as counsel and filed an Amended Complaint on October 6, 2014.

On April 1, 2015, the Defendants filed a motion to dismiss the Amended Complaint. On March 16, 2016, the Court dismissed many of Plaintiff's claims as time barred, but granted Plaintiff leave to amend her Complaint regarding her malicious prosecution and Monell claims. On April 15, 2016, Plaintiff filed a Second Amended Complaint ("SAC").

## ARGUMENT

### I. LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." Tsirelman v. Daines, 794 F.3d 310, 313 (2d Cir. 2015) (*quoting* Jaghory v. N.Y. State Dept. of Educ., 131 F.3d 326, 329 (2d Cir. 1997)); *see also,* Papasan v. Allain, 478 U.S. 265 (1986); Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011) (*quoting* Connecticut v. Am. Elec. Power Co., 582 F.3d 309, 320 (2d Cir. 2009)); Salahuddin v. Coughlin, 993 F.2d 306 (2d Cir. 1993), LaBounty v. Adler, 933 F.2d 121, 123 (2d Cir. 1991). A complaint must plead "enough facts to state a claim

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson, 631 F.3d at 63 (*quoting* Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009)); *see also,* Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc., 712 F.3d 705, 717-18 (2d Cir. 2013).

The Supreme Court has made it clear that a complaint may not be dismissed if there are sufficient factual allegations to "state a claim to relief that is plausible on its face". Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (*discussing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554 (2007) (a complaint need only assert the grounds for the claim through factual allegations that suffice "to raise a right to relief above the speculative level."). The question on a motion to dismiss, then, is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Kuklachev v. Gelfman, 600 F. Supp. 2d 437 (E.D.N.Y. 2009) (*quoting* Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995)); *see also,* Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980) (the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."); *see also,* Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.").

Taking Plaintiff's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff's claims are not only plausible, but are also likely to succeed. A review of the Second Amended Complaint and case precedent makes clear that this Court should deny Defendants' motion to dismiss and allow the plaintiff's claims to proceed to discovery.

## II. PLAINTIFF HAS PLAUSIBLY ALLEGED A MALICIOUS PROSECUTION CLAIM

To prevail in a claim for malicious prosecution under §1983, a plaintiff must allege the four elements of malicious prosecution under New York state law and a "sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *See*, Rohman v. NYCTA, 215 F.3d 208, 215 (2d Cir. 2000); Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). Under New York law, a plaintiff alleging malicious prosecution must allege (1) "the initiation or continuation of a criminal proceeding against him," (2) "termination of the proceeding in plaintiff's favor," (3) "lack of probable cause for commencing the proceeding," and (4) "actual malice as a motivation for defendant's actions." *See*, Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (*quoting* Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997). A claim for malicious prosecution under section 1983 requires the additional element of "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Perez v. Duran, 962 F. Supp. 2d 533, 540 (S.D.N.Y. 2013) citing Rohman v. N.Y.C. Transit Auth. (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000). To satisfy the fifth element, the Plaintiff need only have been subject to multiple court appearances and some form of travel restrictions, which are presumed to be put into effect when the person is released from custody on their own recognizance. Id. at 542.

Here, Plaintiff plausibly pleaded the five elements of a §1983 malicious prosecution claim. First, Plaintiff pleaded that the defendant officers initiated criminal process against her by arresting and charging her with crimes they knew she had not committed. See, SAC ¶¶39 - 41. Second, these bogus criminal charges were dismissed on October 24, 2012. Id. ¶¶42, 48. Third,

5

Plaintiff plausibly pleaded that the defendant officers lacked probable cause to arrest her as she did not resist arrest or obstruct governmental administration; and that the defendant officers only did so in an effort to cover up the fact that they had just slammed her onto the ground, injured her, and denied her medical attention. Id. ¶¶ 47, 41, 42. Fourth, Plaintiff pleaded that the defendant officers acted with malicious intent by arresting her, in an effort to explain her injuries (i.e., that they occurred while she "resisted"), to discredit her should she report the excessive use of force to City officials, to silence her from reporting the incident at all, and/or in retaliation for her "interfering" while the defendant officers used excessive force on her son. Id. ¶¶ 29, 32. 47, 49 52, 53. It is of no import that only Defendant Ferguson is identified as the "arresting" or "reporting" officer, as all of the Defendant officers were present at the time of the arrest and all were a are that no probable cause existed at the time of the arrest. Id. ¶29. Fifth, Plaintiff "suffered a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights" in that she was released on her own recognizance with the expectation of some limitation on travel, as she was required to appear at a minimum of two (2) court hearings lest a bench warrant be issued for her arrest. Id. ¶¶ 40 and 43.

Plaintiff implicates Terrell and Vazquez in the continuation of the malicious prosecution as EACH defendant police officer is under the legal obligation to notify the City and federal authorities of their fellow officers' abuses of authority (Id. at 35, 44, and 49). It is each of the Defendant officers' legal duty to correct any reports based on their own statements, conflicting as they would be, and submit those for the prosecution as well. *See,* Newton v. City of N.Y., 738 F. Supp. 2d 397 (S.D.N.Y. 2010) (*citing* Brown v. Miller, 519 F.3d 231, 237 (5th Cir. 2008) ("A criminal defendant's due process rights are violated when the government obtains a conviction with testimony that government agents know is false.")

Having failed to correct the misstatements of fact in the police report, the Defendants, Terrell and Vazquez, as alleged, are liable for malicious prosecution.

The Defendants claim in their moving papers that, based on the Plaintiff's SAC, they don't know who made the false statements and they don't know what report contained the false statements.

First, the Plaintiff pleads in her malicious prosecution claim that the defendant officers "acted in concert and conspiracy with each other…in an attempt to cover-up" their unlawful conduct (SAC ¶44). As stated above, in Newton, the Defendant officers are obligated to submit corrected reports, free of misstatements or such statements that they know to be false. The statements found in P.O. Ferguson's report consisted of statements collected by Ferguson, from all of the Defendants; all statements which Plaintiff pleads are untrue. See SAC ¶53 and See Exhibit B. The fact that they failed to report that these statements were false, and the fact that they had all conspired to cover up their unlawful conduct, attributes these false statements to all of the named defendants, as alleged in the Plaintiff's complaint.

Second, the Plaintiff makes very clear in her Second Amended Complaint which report she is referring to regarding the false statements: the report on "March 17, 2011, at 23:57" made by Defendant Ferguson (SAC ¶54)(See Exhibit B). The Defendants have this report in their possession, and can seek further explanation by way of further discovery and through depositions.

Third, the Plaintiff states with particularity which statements (agreed to and maintained by all of the Defendants) are material and false, i.e. the refusal to back away from the window, the refusal to leave, the resisting arrest by clenching and avoiding the handcuffs (SAC ¶53).

7

Finally, the basis to determine whether Officer Ferguson acted with malice is found in his participation of the malicious assaults combined with the conflicting reports used to cover it up, and further prosecute a victim of Officer Ferguson's own hands. Malice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard of the rights of the plaintiff. Liberty Synergistics, Inc. v. Microflo Ltd., 50 F. Supp. 3d 267, 292 (E.D.N.Y. 2014) citing Daly v. Ragona, No. 11-CV-3836, 2013 U.S. Dist. LEXIS 97537, 2013 WL 3428185, at *7 (E.D.N.Y. July 9, 2013) (citing Pinsky v. Duncan, 79 F.3d 306, 313 (2d Cir. 1996).

Here, Defendant Ferguson, along with the other officers, acted together in brutally attacking the Plaintiff, and then subsequently arrested her and, with an improper or wrongful motive, hatched a scheme to cover up the motivation behind the attacks through prosecution. Defendant Ferguson wrote in his report such statements that were made by the other officers and himself that would serve to excuse the Defendants from their unwarranted use of force. The Plaintiff, in her pleadings, alleges that P.O. Ferguson "knowingly" prepared and signed a report "embodying all of the *material, false statements and accounts* maintained by the defendant police officers mentioned herein." (SAC ¶¶47, 54). The Defendants submitted the report, and in total, reckless disregard of the Plaintiff's constitutional rights, maliciously prosecuted the Plaintiff (SAC¶¶43, 44, 47)

Accordingly, the Plaintiff has satisfactorily made a claim for malicious prosecution, implicating all of the named defendants, as a result of their acts, plus their attempts to cover up their actions. Any further evidence of the matter can be developed beyond the pleading stage, in discovery.

### III. PLAINTIFF HAS PLAUSIBLY ALLEGED A MUNICIPAL LIABILITY CLAIM

A plaintiff may demonstrate the existence of a municipal policy or practice by showing, amongst other ways, that (a) the acts of the municipal agent were part of a widespread practice that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware, see, City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988), or (b) a municipality's failure to provide adequate training or supervision of its agents. See, Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 407-08 (1997); City of Canton v. Harris, 489 U.S. 378 (1989).

Viewing the facts in the light most favorable to the Plaintiff, she has adequately pleaded a §1983 claim against the City of New York. In her SAC, Plaintiff alleged a widespread practice of violence by NYPD officers and the failure of the NYPD to provide adequate training and supervision of its officers. See, SAC ¶¶ 21, 35, 62, 63, 65, 67, 75. In support of these allegations, Plaintiff cited a 2015 report entitled "Police Use of Force in New York City," which examined uses of force by NYPD officers and the NYPD's response to documented uses of force by its officers between 2010 – 2013, and the culture within the NYPD that led to these uses of force.

In moving to dismiss Plaintiff's Monell claim, Defendants focus on when the report was published and ignore the actual data it was based upon. As the subject incident occurred in 2011, right in the middle of the sample period examined by the Department of Investigation, the report provides support for Plaintiff's claims of deliberate indifference in the NYPD's training and supervision practices existing at that time.

Notably, the report found that between the years of 2010 and 2013, the "NYPD declined to impose discipline in 34 of 77 allegations, or 44.1% of the time." See, SAC ¶75. Additionally, the publication bridges the gap from that time period through the date of the incident to 2015,

9

stating that the "NYPD's current use-of-force policy is vague and imprecise." Id. The overall significance of the report is that between the years of 2010 and 2015 (including the date of the incident, March 15, 2011), the NYPD, which includes the 42nd Precinct (as alleged in SAC ¶¶ 81 and 82), there are undeniable reports of a widespread practice of not only violence and excessive use of force by the NYPD, but also the "fragmented" reporting of incidents and the overuse of generic language, which "fails to capture the specifics" of the incident. According to the report, the NYPD is unable to track the number of use of force incidents; and the officers are inadequately trained and supervised for the de-escalation of incidents prior to resorting to force (Id.).

Applying the issues of the report to the subject incident, the Plaintiff has plausibly pled her Monell claim. When the city declines to discipline police officers for excessive force 44% of the time, the Defendant officers are not deterred from unlawfully and maliciously using force on someone like the Plaintiff or the Plaintiff's son. When it is customary that the police engage in fragmented reporting practices, the Defendants can freely cover up their use of force with self-serving reports, containing factual misstatements, as they had claimed about the Plaintiff. When those reports contain generic, vague, and imprecise language, the officers, including the Defendant officers, are left to bend the truth at will to fit their own narrative and cover up their wrongful acts without any fear of repercussion from their superiors. Finally, with all of these ill-gotten factors on the side of the Defendant officers, they can maliciously prosecute and deny the Plaintiff her rights.

A clear example of the data cited in the Plaintiff's SAC is in the form of the subject incident to which she is pleading, when a group of police officers chased an unarmed mother away from a police station, assaulted her, arrested her without probable cause, and maliciously

prosecuted her with the aid of misstatements and false reports to cover up the fact that they had abused and mistreated her and her son, who was also in their custody.

Accordingly, the Defendants' motion to dismiss should be denied in its entirety, as the Plaintiff had more than satisfactorily pled a claim for Municipal Liability in her Second Amended Complaint.

## CONCLUSION

In light of the foregoing, Plaintiff has plausibly pleaded claims for malicious prosecution and <u>Monell</u> liability, and Defendants' motion to dismiss should be denied in its entirety.

Dated:	Brooklyn, NY

	September 19, 2016	_____/s/_____

	Frank Poe, Esq. (FP4514)